UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                         :

JOE FERNANDEZ,                                :

                       Petitioner,         :

      -against-                             :

                                           :

UNITED STATES OF AMERICA,            :

                                           :

                     Respondent.       :

                                           :
------------------------------------------------------------- X

[STAMP]
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/13/17

**OPINION AND ORDER
DENYING PETITION FOR A
WRIT OF HABEAS CORPUS**

17 Civ. 4806 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Joe Fernandez ("Petitioner") filed a timely pro se petition for a writ of habeas

corpus on June 28, 2017, *see* 28 U.S.C. § 2255(f), challenging his conviction for conspiracy to

commit murder for hire and using a firearm to commit murder. Petitioner alleges that the

Court's jury charge was defective and that his counsel was constitutionally deficient for failing to

raise these issues on direct appeal. For the reasons stated herein, the petition is denied.

<h3 style="text-align:center">Background</h3>

        Pursuant to a superseding indictment filed on February 6, 2013, petitioner was

charged with conspiracy to commit murder-for-hire, in violation of 18 U.S.C. § 1958, and using

a firearm to commit murder in the course of that conspiracy, in violation of 18 U.S.C. § 924(j).

Following a trial that concluded on March 7, 2013, the jury found petitioner guilty on both

counts. On October 7, 2014, the Court sentenced petitioner to two consecutive life terms of

imprisonment, followed by a five-year term of supervised release, and imposed a $200 special

assessment. Petitioner's direct appeal was denied on May 2, 2016, *see United States v.

Fernandez*, 648 F. App'x 56, 59 (2d Cir. 2016), and the Supreme Court denied the petition for a

writ of certiorari, *see Fernandez v. United States*, No. 17-5760, 2017 WL 4506869 (Oct. 10, 2017).

At trial, the government introduced evidence that Patrick Darge, Fernandez's co-conspirator, contracted with Alberto Reyes, Jose Rodriguez-Mora, and Manuel Suero to murder two agents of Mexican drug suppliers, Cuellar and Flores, for $180,000, thereby enabling Reyes and company to renege on a large drug debt. According to Darge, testifying as a government witness, he agreed to commit the murders and recruited his cousin, petitioner, Joe Fernandez, to act as the backup shooter. Trial Tr. at 255–56. Darge testified that he asked petitioner to participate because he knew him to be trustworthy, and he knew that petitioner had a gun that could be used in the murders. Trial Tr. at 273–74. Darge further testified that he told petitioner that he had been "hired to murder two guys," offered to pay petitioner $40,000 to assist him in the murders, and instructed petitioner to bring his own gun. Trial Tr. at 276–77. Darge testified that petitioner agreed to participate. Trial Tr. at 277.

The plan, according to Darge, was to commit the murders in the lobby of an apartment building in the Bronx on February 22, 2000, the site of an apartment used as a storehouse for drugs and money. Reyes was to bring the two victims to the elevator of the Bronx apartment while Darge and Fernandez lurked in a concealed area nearby. Darge testified that after he shot the first victim in the head, his gun jammed and he fled from the scene, but heard shots fired behind him. Trial Tr. at 328. According to Darge's testimony, petitioner arrived at the getaway car minutes later, parked a block away, stating that he "had to make sure they were both dead." Trial Tr. at 332. Cuellar and Flores, the victims, were later found dead in the apartment lobby, lying in a pool of their blood, the shell casings of the spent bullets lying on the lobby floor. Darge testified that Reyes paid him $180,000 for the murders later that day, and that he gave $40,000 to petitioner. Trial Tr. at 335.

2

## Discussion

Petitioner filed this motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. As relevant here, § 2255 allows federal prisoner to collaterally attack a sentence on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). However, it is well settled that "[a] habeas action is not intended to substitute for a direct appeal." *Fountain v. United States*, 357 F.3d 250, 254 (2d Cir. 2004). Therefore, a claim not raised on direct appeal is procedurally barred unless "the defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011).

Petitioner raises two challenges to the jury instructions in his case: (1) that the Supreme Court's decision in *Rosemond v. United States*, 134 S. Ct. 1240 (2014), decided after the trial in this case, changed the law governing aiding and abetting liability under 18 U.S.C. § 924(c); and (2) that the Court erroneously instructed the jury with respect to the term "use" of a firearm under the § 924(c). Relatedly, petitioner claims that his trial and appellate lawyers were ineffective, thereby excusing petitioner's failure to raise these issues on direct appeal. Because petitioner is appearing pro se, I must construe the petition liberally and interpret it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir.2006)).

## A. Petitioner's Challenge to the Aiding and Abetting Jury Instruction Is Procedurally Defaulted

Petitioner first claims that the jury instructions failed to adequately explain aiding and abetting liability under 18 U.S.C. § 924(c), which indirectly formed the basis for Count Two of the Indictment. Petitioner was convicted of violating 18 U.S.C. § 924(j), which criminalizes

causing "the death of a person through the use of a firearm" "in the course of a violation of" § 924(c). § 924(c), in turn, makes it unlawful to use a firearm in connection with "any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c).

Petitioner specifically focuses on *Rosemond v. United States*, 134 S. Ct. 1240 (2014), which held that a defendant can be convicted of aiding and abetting under § 924(c) only upon a showing that the defendant had "advance knowledge of a firearm's presence." *Rosemond*, 134 S. Ct. at 1251. When petitioner was convicted on March 7, 2013, *Rosemond* had not yet been decided. However, even prior to *Rosemond*, the Second Circuit required more than "advanced knowledge" that a firearm would be used under § 924(c) to sustain a conviction. *See United States v. Medina*, 32 F.3d 40, 45–47 (2d Cir. 1994) (holding that "the language of the statute requires proof that [the defendant] performed some act that directly facilitated or encouraged the use or carrying of a firearm," and rejecting the view of other Circuits that required only "knowledge that a firearm will be used").[1]

Petitioner is correct that under *Rosemond* (or the Second Circuit's pre-*Rosemond* rule), my jury instructions did not explain the requirements of the Second Circuit rule. At petitioner's trial, the jury was given a standard charge on aiding and abetting, instructing the jury to consider whether petitioner "participate[d] in the crime charged as something he wished to bring about or associate himself with . . . or [sought] by his actions to make the criminal venture succeed." Trial Tr. at 1017–19. Neither party objected to the charge. Indeed, in their proposed charge submissions, neither party mentioned anything other than the aiding and abetting charge that I gave.

---

[1] The parties do not dispute whether *Rosemond* applies retroactively on collateral review. In general, *Teague v Lane*, 489 U.S. 288, 306–10 (1989), and *Bousley v. United States*, 523 U.S. 614, 619–21 (1998), teach that changes in substantive rules generally apply retroactively. "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004). Because *Rosemond* does just that, it applies retroactively to petitioner's case. *See Farmer v. United States*, 867 F.3d 837, 842 (7th Cir. 2017) (holding that "*Rosemond* thus established a new substantive rule that is retroactive to cases on collateral review").

4

However, this does not entitle petitioner to the relief he seeks. Petitioner did not raise this issue on direct appeal, and therefore his claims are procedurally defaulted unless he can show either: (1) cause for the procedural default and actual prejudice, or (2) that he is actually innocent. *See Thorn*, 659 F.3d at 231. Because petitioner cannot demonstrate either, his claim is procedurally barred.

Under the cause-and-prejudice test, the Supreme Court has instructed courts to construe "cause" narrowly. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (holding "that 'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him"). One way to show "cause" under this test is to show that a "claim is so novel that its legal basis [was] not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984). But petitioner's challenge is not and was not novel. *Rosemond*, on which petitioner relies, was decided on March 4, 2014, and petitioner's direct appeal was filed on November 3, 2014. Petitioner therefore cannot reasonably suggest that his claim was "novel" under *Reed v. Ross*. And petitioner fails to distinguish himself from other defendants who challenged their convictions under § 924(c) by citing *Rosemond* just after it was decided. *See United States v. Prado*, 815 F.3d 93, 102 (2d Cir. 2016) (holding on a direct appeal that the jury instructions were "erroneous under *Rosemond* because they provide no instruction that the jury must find that the defendants had advance knowledge of the gun at a time that they could have chosen not to participate in the crime"); *see also Smith v. Murray*, 477 U.S. 527, 537 (1986) (finding that a petitioner could not show that his claim was novel because similar claims had been "percolating in the lower courts").

Recognizing this difficulty, petitioner argues that although this issue is not novel and was not raised on direct appeal, he should succeed nonetheless because the failure of his appellate counsel to challenge the jury instructions made his representation constitutionally ineffective. Although "an attorney's errors during an appeal on direct review may provide cause

5

to excuse a procedural default," *Martinez v. Ryan*, 566 U.S. 1, 11 (2012), a mistake alone is not sufficient. To establish a claim for ineffective assistance of counsel, petitioner must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). First, petitioner must "demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms.'" *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 688). Second, petitioner must show actual prejudice— that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, both the cause-and-prejudice test and the *Strickland* test require petitioner to show actual prejudice. *See Rajaratnam v. United States*, 2017 WL 887027, at \*2 (S.D.N.Y. Mar. 3, 2017).

As to the first prong, petitioner faces a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Petitioner bears the burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. However, I need not reach the issue of whether appellate counsel's performance was objectively reasonable. As the Supreme Court has explained: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697; *see also Rafael Romero v. United States*, 2017 WL 4516819, at \*4 (S.D.N.Y. Sept. 21, 2017).

Petitioner has not met his burden of showing actual prejudice under the second prong of *Strickland*. The critical testimony at trial came from Patrick Darge, petitioner's co-conspirator. Darge testified at trial that petitioner not only knew in advance that a gun would be used to commit the crime, but that part of his job was to bring and be prepared to use his own gun. Trial Tr. at 276–81. And the jury reasonably believed that petitioner fired several shots, hitting the victims. Trial Tr. at 308. There was no set of facts that would have allowed the jury

6

to convict petitioner without believing that he had "advanced knowledge of a firearm's presence." *Rosemond*, 134 S. Ct. at 1251. There can be no reasonable doubt regarding that proposition. *See Strickland*, 466 U.S. at 694 (requiring a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Under *Strickland*, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). Petitioner has not shown a reasonable probability that the result at trial would have been different had the jury been instructed according to *Rosemond*.

To the extent that petitioner also suggests that he is actually innocent, this claim is similarly without merit. *Thorn*, 659 F.3d at 231 (providing that a petitioner can overcome procedural default upon a showing of actual innocence). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no juror would have convicted him." *Id.* (internal quotation marks omitted) (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)). As explained above, even had the jury instructions explained the "advanced knowledge" requirement under § 924(c), there would not have been a different result. The evidence introduced at trial established petitioner's guilt beyond a reasonable doubt, even if the "advanced knowledge" had been charged. This is not an "extraordinary case" that warrants application of the actual innocence doctrine. *House v. Bell*, 547 U.S. 518, 536 (2006) (internal quotation marks omitted) (quoting *Schlup*, 513 U.S. at 324).

Because petitioner failed to raise his challenge to the jury instructions on direct appeal, his claim is procedurally defaulted. *See Thorn*, 659 F.3d at 231.

## B. The Court's Jury Instruction Under § 924(c) Was Sufficient

Petitioner separately argues that the Court's jury instruction with respect to the "use" of a firearm under § 924(c) was deficient under *Bailey v. United States*, 516 U.S. 137 (1995). *Bailey* teaches that, in order to sustain a conviction, "§ 924(c)(1) requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Bailey*, 516 U.S. at 143. Petitioner claims that the jury instructions did not capture this requirement.

Not only is this claim procedurally defaulted, it is also without merit. At trial, the jury instructions specified that "[i]n order to prove that the defendant used a firearm, the government must prove beyond a reasonable doubt an *active employment* of a firearm by the defendant during and in relation to the commission of the crime of violence." Trial Tr. at 1013 (emphasis added). The instructions went on to clarify that "use" can include "brandishing, displaying, or referring to a weapon so that other persons know that defendant had a firearm available," Trial Tr. at 1013, as well as actually firing the weapon. The jury instructions were therefore entirely consistent with *Bailey*.

In any event, petitioner's claim is also procedurally defaulted because it was not raised in his direct appeal. As explained above, to overcome procedural default, petitioner would need to show either: (1) cause for the default and actual prejudice, or (2) actual innocence. *See Thorn*, 659 F.3d at 231. As to the cause-and-prejudice test, petitioner cannot show any reason that his trial or appellate counsel should have raised this issue, given that the jury instruction was consistent with applicable law and the fact of use was so clear. Petitioner therefore cannot show that his lawyers "'fell below an objective standard of reasonableness' in light of 'prevailing professional norms.'" *Cohen*, 427 F.3d 164 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 688); *see also Abdur-Rahman v. United States*, 2016 WL 1599491, at *2 (S.D.N.Y. Apr. 19, 2016) (noting that "[f]ailure to raise an issue in a brief rarely constitutes ineffective assistance of

8

counsel"). Moreover, the evidence introduced at trial established that the guns here were certainly "actively employed" during the murders—they were fired numerous times, resulting in the death of two people. Petitioner therefore cannot show any prejudice under *Strickland*.

## C. Petitioner's Claim of Ineffective Assistance of Counsel at the Plea State Is Without Merit

Finally, petitioner suggests in his reply brief that his trial counsel failed to properly advise him during the plea bargaining stage. *See Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 134 (2012). Specifically, petitioner claims that "[h]ad counsel explained the *Rosemond* 'advance knowledge' requirement and *Bailey*'s 'active employment' of a firearm meaning . . . Movant would not have proceeded to trial, but would have entered a non-cooperative plea." See Motion in Response to the Government's Memorandum of Law, ECF 4, at 9.

Petitioner has provided no evidence tending to show that his trial counsel's performance was deficient under the test set out in *Strickland*. Petitioner cannot show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

For the reasons discussed herein, the petition is denied. The clerk is instructed to enter judgment, close the file, and tax costs as appropriate. As to appealability, however, petitioner has sufficiently raised a substantial legal question, and I grant a certificate of appealability, *see* 28 U.S.C. § 2253(c)(1), particularly since the sufficiency of my charge is in issue.

SO ORDERED.

Dated:       November  2017
            New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

9